Joseph P. CONNORS, Sr., et al., Plaintiffs,

v.

INCOAL INCORPORATED a/k/a Incoal Coal Company, et al., Defendants.

Civ. A. No. 86–3162 SSH.

United States District Court, District of Columbia.

Oct. 28, 1988.

Rodney F. Page, E. Calvin Golumbic, R. Steven Holt, Washington, D.C., for plaintiffs.

John R. Woodrum, Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of defendants Orville Adkins, Dixie Adkins, Adam Adkins, and Sally Adkins d/b/a Adkins Coal Company (hereinafter "Adkins") to dismiss the complaint against them pursuant to Fed.R.Civ.P. 12(b).

### Background

Plaintiffs in the above-captioned action filed suit in November 1986 against Incoal Incorporated ("Incoal") and S & H Manufacturing, Inc. ("S & H") seeking judgment for pension plan withdrawal liability as provided for in the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001 *et seq.* Plaintiffs later amended their complaint to add Kite Coal Sales, Inc. and Double A Farms and Adkins Coal Company (both of which are partnerships of Orville Adkins, Dixie Adkins, Adam Adkins, and Sally Adkins).[1]

Plaintiffs contend that the corporate defendants comprise a "brother-sister group" under common control and are thus jointly and severally liable for Incoal's withdrawal liability under ERISA. It is conceded by plaintiffs that the Adkins defendants are neither parties to the 1978 and 1981 collective bargaining agreements nor participating employers in the plans. Any liability would be predicated solely upon Incoal's withdrawal and a finding of common control.

Adkins has moved to dismiss. Adkins contends that service was improper because the partnership ceased to exist prior to the filing of this suit.[2] Adkins also argues that, on the last date of Incoal's participation in the UMWA plans, Adkins and Incoal were not under common control because Adkins was dissolved and Adkins thus cannot be held liable for any withdrawal liability owed by Incoal.

The Adkins partnership has been described by defendants as a partnership for a particular undertaking.[3] Such a partnership dissolves, but is not necessarily terminated, when the undertaking is complete. According to Adkins, all partnership activity ceased at the end of 1984 and all remaining partnership funds were disbursed on March 21, 1985. *See* Defendant's Memorandum at 6. Defendant further asserts that it cannot fairly be characterized as a trade or business under common control after dissolution in December 1984.

The partnership was organized under the laws of Kentucky, which has adopted the Uniform Partnership Act. The Act distinguishes between dissolution and termination of partnerships: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Ky.Rev.Stat.Ann. § 362.295 (Michie/Bobbs Merrill 1986). Moreover, "[t]he dissolution of the partnership does not of itself discharge the existing liability of any partner." *Id.* at § 362.325. In other words, "dissolution operates only with respect to future transactions; as to everything past the partnership continues until all preexisting matters are terminated." *Cotten v. Perishable Air Conditioners*, 18 Cal.2d 575, 116 P.2d 603 (1941). The effect of dissolution is to strictly limit the authority of partners "[e]xcept so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished." Ky.Rev.Stat.Ann. § 362.310 (Michie/Bobbs Merrill 1986).

Plaintiffs are seeking a declaration that Adkins is jointly and severally liable for

---

1. Although both Double A Farms and Adkins Coal share the same partner group, the motion to dismiss does not purport to be filed on behalf of Double A Farms, which has filed an answer to the amended complaint.

2. Adkins is not attacking the form of service. Its argument is that a terminated partnership cannot be sued and, therefore, a terminated partnership cannot be served with process. The Court did not reach this question.

3. Defendants assert that Adkins Coal was created to receive payments from Incoal for the share of proceeds due under a contract mining agreement.

Incoal's withdrawal liability. Adkins asserts, and plaintiffs agree, that Incoal ceased covered operations in February 1985. Adkins argues that since the partnership was dissolved no later than December 1984, it was not under common control at the time Incoal incurred the liability at issue.

The Court agrees. Nothing in the record before the Court indicates that Adkins was continuing operations (beyond winding up) after December 1984. Although plaintiffs contend that discovery may reveal that Adkins conducted business, they have not offered any factual basis for this belief. One purpose of ERISA's common control provisions, which impose liability on all members of a common control group, is "to fix liability upon those who were responsible at the time of withdrawal for continued funding." *Jaspan v. Certified Indus.*, 658 F.Supp. 332, 334 (E.D.N.Y.1986), *citing In re Challenge Stamping & Porcelain Co.*, 719 F.2d 146, 151 (6th Cir.1983). This purpose is not served by imposing liability on a dissolved partnership whose only activities related to hastening its own termination.

An appropriate order accompanies this Memorandum Opinion.

ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it hereby is

ORDERED, that the motion of Orville Adkins, Dixie Adkins, Adam Adkins, and Sally Adkins d/b/a Adkins Coal Company to dismiss the complaint against them is granted.

SO ORDERED.